# Exhibit B

# Demand for Arbitration Form

## Instructions for Submittal of Arbitration to JAMS

---

## INSTRUCTIONS

Please submit this form to your local JAMS Resolution Center. Once the below items are received, a JAMS professional will contact all parties to commence and coordinate the arbitration process, including the appointment of an arbitrator and scheduling a hearing date.

📞 **1-800-352-JAMS**
🖥 **www.jamsadr.com**

---

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS with the requested number of copies:

**A. Demand for Arbitration** *(2 copies)*

**B. Proof of service of the Demand on the appropriate party** *(2 copies)*

**C. Entire contract containing the arbitration clause** *(2 copies)*
- *To the extent there are any court orders or stipulations relevant to this arbitration demand, e.g. an order compelling arbitration, please also include two copies.*

**D. Administrative Fees**
- *For two-party matters, the Filing Fee is $1,500. For matters involving three or more parties, the filing fee is $2,000. The entire Filing Fee must be paid in full to expedite the commencement of the proceedings. Thereafter, a Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. JAMS also charges a $1,500 filing fee for counterclaims. For matters involving consumers, the consumer is only required to pay $250. See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses. For matters based on a clause or agreement that is required as a condition of employment, the employee is only required to pay $400. See JAMS Policy on Employment Arbitrations, Minimum Standards of Fairness.*

- *A refund of $600 will be issued if the matter is withdrawn within five days of filing. After five days, the filing fee is non-refundable.*

**Once completed, please submit to your local JAMS Resolution Center.**
*Resolution Center locations can be found on the JAMS website at: http://www.jamsadr.com/locations/.*

 **JAMS** ®

# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

Add more respondents on **page 6**.

RESPONDENT
NAME

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX          EMAIL

### RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/
COMPANY

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX          EMAIL

## FROM CLAIMANT

Add more claimants on **page 7**.

CLAIMANT
NAME

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX          EMAIL

### CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/
COMPANY

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX          EMAIL



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐ If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

AMOUNT IN CONTROVERSY (US DOLLARS)



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. **Please cite location of arbitration provision and attach <u>two copies</u> of entire agreement.**

ARBITRATION PROVISION LOCATION

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. **Send the original response and counter-claim to the claimant at the address stated above with <u>two copies</u> to JAMS.**

## REQUEST FOR HEARING

REQUESTED LOCATION

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See:* **Comprehensive Rule 16.1**

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

SIGNATURE

DATE

NAME
(PRINT/TYPED)

# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

**Completion of this section is <u>required for all consumer or employment claims</u>.**

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION.  For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☐ <u>YES</u>, this **is** a CONSUMER ARBITRATION.

☐ <u>NO</u>, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

## EMPLOYMENT MATTERS

**If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000     ☐ $100,000 to $250,000     ☐ More than $250,000     ☐ Decline to State

## WAIVER OF ARBITRATION FEES

**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## RESPONDENT #2 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

RESPONDENT
NAME

ADDRESS

CITY | STATE | ZIP

PHONE | FAX | EMAIL

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/
COMPANY

ADDRESS

CITY | STATE | ZIP

PHONE | FAX | EMAIL

## RESPONDENT #3 (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

RESPONDENT
NAME

ADDRESS

CITY | STATE | ZIP

PHONE | FAX | EMAIL

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/
COMPANY

ADDRESS

CITY | STATE | ZIP

PHONE | FAX | EMAIL



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS

## CLAIMANT #2

CLAIMANT NAME

ADDRESS

CITY                    STATE               ZIP

PHONE               FAX               EMAIL

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/COMPANY

ADDRESS

CITY                    STATE               ZIP

PHONE               FAX               EMAIL

## CLAIMANT #3

CLAIMANT NAME

ADDRESS

CITY                    STATE               ZIP

PHONE               FAX               EMAIL

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/COMPANY

ADDRESS

CITY                    STATE               ZIP

PHONE               FAX               EMAIL

CONN LAW, PC
ELLIOT CONN                    Bar No. 279920
354 Pine St., 5th Floor
San Francisco, CA  94104
Telephone:    (415) 417-2780
Facsimile:    (415) 358-4941
elliot@connlawpc.com

Attorneys for Claimants JOHN CHASE and HILARY CHASE

DEMAND FOR JAMS ARBITRATION

| | |
|---|---|
| JOHN CHASE and HILARY CHASE, | **JAMS Reference No.** |
| Claimants. | **ARBITRATION DEMAND FOR PUBLIC INJUNCTIVE RELIEF, DAMAGES, AND DECLARATORY RELIEF FOR VIOLATIONS OF:** |
| vs. | |
| KIA MOTORS AMERICA, INC.; MICHAEL C. STEAD, INC. dba MICHAEL STEAD'S HILLTOP FORD KIA; and HYUNDAI CAPITAL AMERICA dba KIA MOTORS FINANCE. | **(1)  EXPRESS WARRANTY, CIVIL CODE §1790, *ET SEQ.*;** |
| | **(2)  IMPLIED WARRANTY OF MERCHANTABILITY, CIVIL CODE §1790, *ET SEQ.*;** |
| Respondents. | **(3)  IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, CIVIL CODE §1790, *ET SEQ.*;** |
| | **(4)  THE ELDER ABUSE AND DEPENDANT ADULTS CIVIL PROTECTION ACT (WELFARE & INSTITUTIONS CODE §15610.07 *ET SEQ.*);** |
| | **(5)  THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CIVIL CODE, §1785.1 *ET SEQ.*;** |
| | **(6)  THE CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE §1770, *ET SEQ.*;** |
| | **(7)  THE UNFAIR COMPETITION LAW, (BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.*); and** |
| _____/ | **(8)  DECLARATORY RELIEF** |

1

ARBITRATION DEMAND FOR PUBLIC INJUNCTIVE RELIEF, DAMAGES, AND DECLARATORY RELIEF

# INTRODUCTION

1.     Claimants JOHN CHASE and HILARY CHASE ("Claimants"), on behalf of themselves and the general public, and in the public interest, bring this action against Respondents KIA MOTORS AMERICA, INC. ("KIA"), MICHAEL C. STEAD, INC. dba MICHAEL STEAD'S HILLTOP FORD KIA ("HILLTOP KIA"), and HYUNDAI CAPITAL AMERICA dba KIA MOTORS FINANCE ("KIA FINANCE") (together, "Respondents") arising out of Claimants' purchase of a new 2017 Kia Sportage, VIN: KNDPRCA62H7148873 ("the Vehicle"), which they purchased from HILLTOP KIA on November 21, 2016.

2.     In purchasing the Vehicle, Claimants specifically relied on KIA advertisements and representations by HILLTOP KIA and other KIA agents that the Vehicle was equipped with a functioning "Autonomous Emergency Braking System" ("AEB") and other supplemental safety features, including but not limited to a "Forward Collision Warning System" ("FCWS").

3.     The purpose of AEB is "to detect and monitor vehicles traveling ahead of you.  It then works to automatically apply the brakes if it determines a crash might be imminent, helping to avoid a collision or mitigate the effects if it cannot be avoided."[1]

4.     Purchasing a vehicle equipped with functioning supplemental safety systems was especially important to Claimants because Claimant HILARY CHASE is a disabled adult that suffered a traumatic brain injury when she was 20 years old that left her permanently disabled and has impacted her short-term memory, depth perception, and attention span.  Claimants believed that it was important that any vehicle that HILARY CHASE drives has extensive supplemental safety features.

5.     In purchasing the Vehicle for HILARY CHASE's use, Claimants relied on representations and advertisements by KIA, HILLTOP KIA, and other KIA agents that the Vehicle's "Autonomous Emergency Braking System" and Forward Collision Warning System would continuously function and could be used for the ordinary purpose of driving.  However, Respondents failed to disclose the material facts that the AEB and FCWS "does not operate in certain situations" or that "there is no valid test to prove the autonomous brake system works."

---

[1] https://www.kia.com/us/k3/content/media/all/vehicles/sportage/brochures/brochure_sportage_2017.pdf

6.      Had Claimants known that the AEB and FCWS did not reliably function and that there was no way to test whether they were currently functioning, they never would have purchased the Vehicle.  Instead, they would have purchased another vehicle that had functioning supplemental safety features.

7.      In addition, the failure of the AEB and other safety features to work consistently on Claimants' specific Vehicle creates a safety hazard.  Though the Vehicle came equipped with warranties, including a factory 5-year/60,000 mile warranty, KIA and HILLTOP KIA have refused to honor, and continue to refuse to honor, their warranties with regards to the AEB and FCWS and have refused to repair the Vehicle under the express warranty.

8.      As a result of Respondents' failure to disclose the defects with the AEB/FCWS Systems and/or the fact that they will not repair the Systems under warranty, Claimants have had to expend, and will continue to have to expend, a substantial sum through no fault of their own. This has prevented Claimants from receiving the benefit of the bargain they made with Respondents for a safe, operable vehicle.

9.      At all relevant times, Respondents knew or should have known that the AEB/FCWS Systems on KIA vehicles were prone to error.  According to federal regulatory databases, the AEB/FCWS failure that Claimants and the general public have experienced is not an isolated or localized event and KIA has now begun to issue vehicle recalls for this same issue.

10.     By failing to inform Claimants and the general public about the real (and limited) nature of the AEB/FCWS, Respondents have caused Claimants and the general public to bear expenses and costs they otherwise should have had to bear in violation of Consumers Legal Remedies Act, Civil Code §1750 *et seq*., the Unfair Competition Law, Business & Professions Code §17200 *et seq*., and other California consumer protection statutes.  By virtue of this action, Claimants seek a public injunction to enjoin Respondents' unlawful and unfair practices and to enjoin Respondents' deceptive and false advertising regarding the functionality of KIA vehicles' AEB and FCWS Systems.

11.     Claimants also seek redress for their individual damages for Respondents' violations of Song-Beverly Consumer Warranty Act, Civil Code §1790 *et seq*., the Elder Abuse and

1   Dependent Adults Civil Protection Act, Welfare & Institutions Code §15610.07, *et seq*., the

2   Consumers Legal Remedies Act, Civil Code §1750, *et seq*., the California Consumer Credit

3   Reporting Agencies Act, Civil Code §1785.1 *et seq*., and other California consumer protection

4   statutes.  Claimants seek attorneys' fees and costs.

5   **PARTIES**

6   12.    Claimant JOHN CHASE is an individual who purchased the 2017 Kia Sportage.

7   Claimant JOHN CHASE at all material times was a resident of Alameda County, California.  At

8   all material times herein, Claimant JOHN CHASE was and is a "Senior Citizen" as that term is

9   defined by Civil Code §1761(f) and an "Elder" as that term is defined by Welfare & Institutions

10  Code §15610.27.

11  13.    Claimant HILARY CHASE is an individual who purchased the 2017 Kia Sportage.

12  Claimant HILARY CHASE at all material times was a resident of Alameda County, California.

13  At all material time herein, Claimant HILARY CHASE was and is a "Disabled Person" as that

14  term is defined by Civil Code §1761(g) and a "Dependent Adult" as that term is defined by

15  Welfare & Institutions Code §15610.23.

16  14.    Claimant KIA is a California corporation with its principal place of business in Irvine,

17  California.

18  15.    Claimant HILLTOP KIA is a California corporation with its principal place of business

19  in Richmond, California, which is authorized to and did conduct business in California, including

20  the county of Alameda. HILLTOP KIA is in the business of selling new and used cars. At all

21  times relevant herein, HILLTOP KIA held itself out as an authorized KIA dealership and

22  ostensible agent of KIA.

23  16.    Claimant KIA FINANCE, at all times relevant, was a California corporation and financial

24  institution with its principal place of business in Irvine, California, which is authorized to and did

25  conduct business in California, including the county of Alameda.  The financing of the Vehicle

26  was arranged through KIA FINANCE at and by HILLTOP KIA.  All claims and defenses that

27  Claimants have against HILLTOP KIA arising out of the automotive transaction are also valid

28  against KIA FINANCE, pursuant to the terms of the contract and to the extent allowed by Civil

4
00011

1   Code §2983.5. Given the violations of law alleged below, and the Federal Trade Commission

2   Holder in Due Course rule, 16 C.F.R. §433 *et seq.* which subjects the holder of a consumer credit

3   contract to all claims and defenses of the buyer against the seller, KIA FINANCE is subject to all

4   claims and defenses of Claimants against HILLTOP KIA.

5   ### AGENCY AND ALTER EGO

6   17.     HILLTOP KIA was acting as an agent of KIA for purposes of repairing vehicles under

7   the KIA basic five-year/60,000-mile warranty. Claimants further allege that KIA is the

8   administrator and warrantor of the warranties that accompanied the Vehicle.

9   ### FACTUAL ALLEGATIONS

10  ### Claimants' Purchase of the Vehicle

11  18.     When Claimant HILARY CHASE was 20 years old, she suffered a traumatic brain injury

12  that has left her permanently disabled and has impacted her short-term memory, depth

13  perception, and attention span.  Claimant HILARY CHASE is a "Disabled Person" under

14  California Civil Code §1761(g) and a "Dependent Adult" under Welfare & Institutions Code

15  §15610.23.  Claimant JOHN CHASE is HILARY CHASE's father.

16  19.     In deciding to purchase a vehicle for HILARY CHASE, Claimants sought a vehicle that

17  came equipped with supplemental safety systems, such as pre-collision warning and pre-collision

18  automated braking.

19  20.     Before deciding to purchase the 2017 Kia Sportage, VIN: KNDPRCA62H7148873 ("the

20  Vehicle"), JOHN CHASE viewed KIA television advertisements, read online materials, and read

21  KIA promotional materials, all of which touted KIA's Forward Collision Warning System

22  ("FCWS") and Autonomous Emergency Braking System ("AEB").

23  21.     JOHN CHASE decided to purchase the Vehicle specifically because it was equipped with

24  the AEB and FCWS Systems.  In addition to the materials listed above, JOHN CHASE relied on

25  the window sticker for the Vehicle and other representations made by KIA and HILLTOP KIA.

26  Had JOHN CHASE known that the AEB and FCWS Systems did not function at times,

27  Claimants never would have purchased the Vehicle.

28  22.     In addition, when Claimants went to purchase the Vehicle from HILLTOP KIA on

1   November 21, 2016, Claimant JOHN CHASE explicitly informed HILLTOP KIA's

2   representatives that Claimants were only purchasing the Vehicle because of AEB and FCWS

3   Systems and that he believed that these supplemental safety systems were necessary to

4   accommodate HILARY CHASE's disability.

5   23.     At no point prior to the purchase of the Vehicle, did any representative of HILLTOP KIA

6   inform Claimants that the AEB and FCWS "did not work in certain situations" or that "there is

7   no valid test to prove the autonomous brake system works."

8   24.     Based on KIA's advertisements and the representations made to Claimants by KIA,

9   HLLTOP KIA, and other KIA agents, Claimants decided to purchase the Vehicle from

10  HILLTOP KIA.  Financing of the Vehicle was arranged by the dealership through KIA

11  FINANCE. A copy of the purchase agreement is attached as **Exhibit A** and incorporated herein

12  by reference.

13      **The "Autonomous Emergency Braking" System's Failure on Claimant's Vehicle**

14  25.     Following their purchase of the Vehicle, Claimants noticed that the AEB and FCWS

15  Systems never worked.  Unlike JOHN CHASE's other vehicle, also equipped with an

16  autonomous braking system, the Vehicle's AEB and FCWS would not engage.

17  26.     Each time that the Vehicle was taken to HILLTOP KIA for repair, Claimants informed

18  HILLTOP KIA that they believed that the AEB and FCWS Systems were not functioning.

19  27.     During their ownership of the Vehicle, Claimants also experienced major engine issues

20  and the Vehicle was out of service for repair for no fewer than 24 days.

21  28.     On October 9, 2018, JOHN CHASE took the Vehicle to HILLTOP KIA for warranty

22  repair and complained that the "VEHICLE WILL NOT BRAKE/STOP WITH AUTONOMOUS

23  BRAKING SYSTEM ON." (**Exhibit B**).

24  29.     HILLTOP KIA confirmed that the AEB and FCWS Systems did not function and noted

25  "UNABLE TO DUPLICATE OPERATION."  (*Id.*)  The repair order reads:

26      ATTEMPT TO VERIFY THE CUSTOMER CONCERN OF THE
        AUTONOMOUS BRAKE SYSTEM NOT FUNCTIONING. PERFORM A
27      TEST WITH THE CUSTOMER VEHICLE AND USE SOME CARDBOARD
        BOXES AS OBJECTS TO RUN INTO. FOUND WHEN THIS WAS DONE
28      THE SYSTEM DID NOT ACTIVATE. PERFORM SAME TEST WITH A NEW

VEHICLE WITH THE SAME RESULT. CONTACTED KIA TECHLINE WITH CONCERN. . . . BASED ON INITIAL COMMUNICATION WITH TECHLINE ENGINEERING HAS STATED THAT THERE IS NO VALID TEST TO PROVE THE AUTONOMOUS BRAKE SYSTEM WORKS.

**(Exhibit B)**

30.     Upon learning that the AEB and FCWS Systems did not function, that there was no way of determining whether they functioned, and that KIA would not repair it, Claimants began to contact KIA and HILLTOP KIA to request that they repurchase the Vehicle and refund the monies paid.  KIA refused.

31.     On December 21, 2018, Claimants sent a letter pursuant to California's Consumers Legal Remedies Act, to KIA, HILLTOP KIA, and KIA FINANCE, requesting rescission of the transaction, payment of restitution and damages, and payment of attorneys' fees and costs. (**Exhibit C**).  HILLTOP KIA and KIA FINANCE did not respond.

32.     KIA denied all liability and instead attempted to justify the failure of the AEB and FCWS Systems by pointing to excerpts in the Kia Sportage Owner's Manual.  The Owner's Manual was not provided to Claimants prior their purchase of the Vehicle.  According to KIA, prolix in the Owner's Manual states:

> On page 6-51: *"This system is only a supplemental system and it is not intended to, nor does it replace the need for extreme care and attention of the driver. The sensing range and objects detectable by the sensors are limited…AEB does not stop the vehicle completely and does not avoid collisions."*

> On page 6-55: *"The AEB operates in accordance with the risk levels, such as the distance from the vehicle/passer-by in front, the speed of the vehicle/passer-by in front, and the driver's vehicle operation. Do not drive dangerously to activate the AEB system on purpose."*

> On page 6-57: *"When the AEB is not working properly, the AEB warning light will illuminate and the warning message will appear for a few seconds. After the message disappears, the master warning light will illuminate."*

> On page 6-58: *"Due to the sensing limitation, the AEB may not produce warning messages or warning alarm at all."*

> On page 6-62: *"The AEB does not operate in certain situations. Thus, never test-operate the AEB against a person or an object. It may cause a severe injury or even death."*

**(Exhibit D)**

33.     Had Claimants been aware that "[t]he AEB does not operate in certain situations" and

1    that "Due to the sensing limitation, the AEB may not produce warning messages or warning

2    alarm at all" they never would have purchased the Vehicle.  Rather, they would have purchased a

3    vehicle from any one of the other many manufacturers that sell vehicles with functional

4    supplemental safety features.

5                          **Respondents' Post-Litigation Conduct**

6    34.    Following Respondents failure to provide adequate relief in response to Claimants'

7    December 21, 2018 Pre-Litigation Demand Letter, Claimants initiated this litigation by filing a

8    Complaint in Alameda County Superior Court, on March 14, 2019.  Respondents answered on

9    May 23, 2019.

10   35.    Unable to continue to make payments on an unsafe Vehicle that they were no longer

11   driving, Claimants issued a Notice of Rescission of Contract, Rejection, and Revocation of

12   Acceptance of Vehicle ("Notice of Rescission") and has stopped making payments on the

13   rescinded contract. (**Exhibit E**).  Respondents have elected not to take possession to the Vehicle.

14   36.    Despite KIA FINANCE's decision not to pick up the Vehicle, KIA FINANCE has

15   threatened to report both Claimants as past due on their account to each of the three Credit

16   Reporting Agencies, TransUnion, Experian, and Equifax.  As to Claimant HILARY CHASE,

17   KIA FINANCE has carried through with its threat and has reported HILARY CHASE as past

18   due for no fewer than three months.

19   37.    30 day, 60 day, and 90 day past due notifications are seriously derogatory marks on a

20   consumer's credit report.  The derogatory information reported by KIA FINANCE would be the

21   only derogatory marks on Claimant JOHN CHASE's consumer credit reports.

22   38.    Given KIA FINANCE's service of the complaint in this action, its service of the Notice

23   of Rescission, its knowledge of the unrepaired defects with the Vehicle, and its voluntary

24   decision not to pick up the Vehicle, KIA FINANCE knows that it has no right to report to the

25   credit reporting agencies that Claimants are "past due."  Reporting Claimant HILARY CHASE

26   as past due constitutes a willful violation of the Consumer Credit Reporting Agencies Act, Civil

27   Code §1785.25(a), which prohibits furnishing information on a transaction or experience to a

28   consumer credit reporting agency if the furnisher knows or should know that the information is

incomplete or inaccurate.

**KIA Has Now Recalled Thousands of Vehicles For AEB/FCWS Malfunctions**

39.      At all relevant times, Respondents knew or should have known that the KIA AEB and FCWS Systems were prone to malfunction.  In fact, following the initiation of this litigation, KIA has begun to recall vehicles for issues related to the AEB and FCWS Systems.  For example, on July 30, 2019, KIA notified the National Highway Traffic Safety Administration ("NHTSA") that it was recalling certain KIA vehicles because:

> A software error in the Forward Collision-Avoidance Assist (FCA) system may cause the braking assist function to not engage when a stationary vehicle is detected.
> Improper intervention of the Forward Collision-Avoidance Assist can increase the risk of a crash.

**(Exhibit F)**

40.      Despite informing Claimants that "there is no valid test to prove the autonomous brake system works," KIA has now informed NHTSA that it was able to test for the malfunction because between June 1 and July 15, 2019:

> KMC and supplier jointly conduct extensive duplication testing on actual vehicle and confirm software error which impairs the braking assist function to work properly when the FCA senses a potential frontal collision with a stationary vehicle.

**(Exhibit G)**

41.      KIA still has not issued a recall for Claimants' model Vehicle.

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty in Violation of the Song-Beverly Consumer Warranty Act**
**Civil Code §1790 *et seq.*)**
**(Against KIA)**

42.      Claimants re-allege and incorporate by reference herein each of the allegations set forth above.

43.      The Vehicle is a consumer good that Claimants used and purchase for use primarily for personal, family or household purposes.  As such, the Vehicle is a "consumer product" as that term is defined in California Civil Code §1791(a).

44.      At all relevant times, KIA has been a company engaged in the business of designing,

1    manufacturing and advertising the Vehicle to Claimants as well as the general public.  As such,

2    KIA is a "manufacturer" as that term is defined in California Civil Code §1791(j).

3    45.    As part of the purchase of the Vehicle, Respondent KIA included a written 5-year/60,000

4    mile factory warranty with the express purpose of preserving or maintaining the utility or

5    performance of the Vehicle or providing compensation if there is a failure in utility or

6    performance.  More specifically, the express warranty covers any repairs or replacements needed

7    during the warranty period due to defects in factory materials or workmanship.  Any required

8    adjustments or repairs would also be made during the basic coverage period.  All warranty

9    repairs and adjustments, including parts and labor, were to be made at no charge.  Additional

10   warranties were set forth in the warranty booklet, and are incorporated herein by reference as

11   though fully set forth. KIA's warranty is an "express warranty" as that term is defined in

12   California Civil Code §1791.2(a)(1).

13   46.    The defects experienced by Claimants with the AEB and FCWS Systems on the Vehicle

14   substantially impaired and continue to substantially impair the use, value, and safety of the

15   Vehicle to Claimants.  Despite Claimants' repeated efforts to provide KIA the opportunity to

16   repair the Vehicle, KIA refused to replace or repair the defective AEB and FCWS Systems.

17   47.    As a direct and proximate result of KIA's willful violation of its obligations under the

18   Song-Beverly Consumer Warranty Act, Claimants have suffered damages, including but not

19   limited payments on the Vehicle, finance charges, other incidental and consequential damages,

20   including but not limited to the cost of alternative transportation, and attorneys' fees and costs

21   which Claimants have incurred and will continue to incur in order to protect their rights in this

22   matter.

23   48.    Claimants are entitled to a civil penalty of two times their actual damages because of

24   KIA's willful failure to comply with its obligations pursuant to the Song-Beverly Consumer

25   Warranty Act, Civil Code §1794(c).

26   49.    Under California Civil Code §1794(d), Claimants are entitled to recover a sum equal to

27   the aggregate amount of costs and expenses, including attorneys' fees.  As a proximate result of

28   Respondent's misconduct as alleged herein, and in an effort to protect their rights, Claimants

1   have incurred and will continue to incur legal fees, costs, and expenses in connection therewith.

2      WHEREFORE, Claimants pray for relief as set forth below.

3   **SECOND CAUSE OF ACTION**
   **(Breach of Implied Warranty of Merchantability in Violation of Civil Code §1792 *et seq.*)**
4   **(Against KIA, HILLTOP KIA, and KIA FINANCE)**

5   50.      Claimants re-allege and incorporate by reference herein each and every allegation set

6   above.

7   51.      Due to the existence of the express warranties, Respondents cannot disclaim implied

8   warranties, including the implied warranty of merchantability and the warranty of fitness for a

9   particular purpose.  California Civil Code §§1792, 1792.1, 1793.  These warranties were part of

10  the basis of the bargain embodied in the contracts for the purchase of the Vehicle entered into by

11  Claimants.  Claimants' Vehicle contained an implied warranty of merchantability running from

12  Respondents to Claimants pursuant to California Civil Code §1792.

13  52.      The duration of the implied warranty of merchantability is coextensive in duration with the

14  express warranties which accompanied the purchase of the Vehicle pursuant to California Civil

15  Code §1791.1(c).

16  53.      Claimants purchased the Vehicle with the reasonable expectation that the Vehicle was fit

17  to be used for the ordinary and intended purpose of providing Claimants reliable and safe

18  transportation.  KIA knew when it manufactured and sold the Vehicle that the intended and

19  ordinary purpose of the Vehicle was to provide its driver with reliable and safe transportation.

20  54.      At all times that Claimants had possession of the Vehicle, Claimants used it for the

21  intended and ordinary purpose of transportation.  However, the Vehicle was not fit for the

22  ordinary purposes for which it was sold.  It was in fact defective, as set forth above, and not fit to

23  provide Claimants with dependable, safe transportation.

24  55.      As a direct and legal result of Respondents' violation of their obligations under the Song-

25  Beverly Consumer Warranty Act, Claimants have suffered actual, consequential, and incidental

26  damages, including but not limited to money expended on the purchase of the Vehicle, the loss of

27  the use of the Vehicle during the time it has been inoperable or otherwise out of service while in for

28  repairs,  and attorneys' fees which Claimants have incurred and will continue to incur in order to

1  protect their rights in this matter. The precise amount of these damages is unknown at the present

2  time. Attorneys' fees, loss of use, and other damages continue to accrue. Pursuant to Civil Code

3  §1791.1(d), Claimants are entitled to the remedies set forth in Civil Code §1794.

4  56.     Pursuant to Civil Code §1794(d), Claimants are entitled to recover a sum equal to the

5  aggregate amount of costs and expenses, including attorneys' fees. As a legal result of Respondents'

6  misconduct as alleged herein, and in an effort to protect their rights, Claimants have incurred and

7  will continue to incur legal fees, costs, and expenses in connection therewith.

8          WHEREFORE, Claimants pray for relief as set forth below.

9  **THIRD CAUSE OF ACTION**
   **(Breach of Implied Warranty of Fitness for a Particular Purpose in Violation of Civil Code**
10  **§1792.1 *et seq.*)**
    **(Against KIA, HILLTOP KIA, and KIA FINANCE)**
11

12  57.     Claimants re-allege and incorporate by reference herein each and every allegation set above.

    58.     Because Respondents have given an express warranty as part of the purchase of the Vehicle,
13

14  Respondents cannot disclaim implied warranties, including the implied warranty of fitness for a

    particular purpose. California Civil Code §§1792, 1792.1, 1793.
15

16  59.     The duration of the implied warranty of fitness is coextensive in duration with the express

17  warranties which accompanied the purchase of the Vehicle pursuant to California Civil Code

    §1791.1(c).
18

19  60.     In purchasing the Vehicle, Claimants required that the Vehicle have functioning

20  supplemental safety systems, including a functioning Autonomous Emergency Braking System and

21  Forward Collision Warning System to allow Claimant HILARY CHASE to safely drive the

    Vehicle.  KIA and HILLTOP KIA knew or had reason to know that Claimants were relying on KIA
22

23  and HILLTOP KIA's skill and/or judgment that the AEB and FCWS Systems functioned.  As a

24  result, the sale of the Vehicle was accompanied by an implied warranty of fitness for a particular

    purpose extending from KIA and HILLTOP KIA to Claimants.  California Civil Code §1792.1.
25

26  61.     However, the Vehicle was not fit for the particular purpose that it was warranted in that

27  "[t]he AEB does not operate in certain situations," "Due to the sensing limitation, the AEB may

28  not produce warning messages or warning alarm at all," and that "there is no valid test to prove

1    the autonomous brake system works."

2    62.    As a direct and legal result of Respondents violation of their obligations under the Song-

3    Beverly Consumer Warranty Act, Claimants have suffered actual, consequential, and incidental

4    damages, including but not limited to money expended on the purchase of the vehicle,  and

5    attorneys' fees which Claimants have incurred and will continue to incur in order to protect their

6    rights in this matter. The precise amount of these damages is unknown at the present time.

7    Attorneys' fees, loss of use, and other damages continue to accrue. Pursuant to Civil Code

8    §1791.1(d), Claimants are entitled to the remedies set forth in Civil Code §1794.

9          WHEREFORE, Claimants pray for relief as set forth below.

10                          **FOURTH CAUSE OF ACTION**
11   **(Violations of the Elder Abuse and Dependent Adult Civil Protection Act, Welfare &**
     **Institutions Code §15600, *et seq.*)**
12   **(Against KIA, HLLTOP KIA, and KIA FINANCE)**

13   63.    Claimants reallege and incorporate by reference herein all of the allegations set forth

14   above.

15   64.    The Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA") was enacted

16   in 1991 to protect elders and dependent adults from both financial and physical abuse.  The

17   EADACPA recognized that elderly persons and dependent adults are more subject to abuse,

18   neglect, and abandonment and creates heightened protections for this disadvantaged class.  The

19   intent of the statute is to "enable interested persons to engage attorneys to take up the cause of

20   abused elderly persons and dependent adults."  Welfare & Institutions Code §15600(j).

21   65.    At all times relevant herein, Claimant JOHN CHASE is and was an "Elder" adult within

22   the meaning of Welfare & Institutions Code §15610.30 in that he is a California resident over the

23   age of 65, born on December 5, 1942.

24   66.    At all times relevant herein, Claimant HILARY CHASE is and was a "Dependent Adult"

25   adult within the meaning of Welfare & Institutions Code §15610.23 in that she is a California

26   resident between the ages of 18 and 64 that had physical and mental limitations, *i.e.* brain injury,

27   that restricted her ability to carry out normal activities and protect her rights.

28   67.    The acts and omissions of Respondents as above alleged constitute financial abuse of

1   both an elder adult and dependent adult within the purview and protections of the California

2   Welfare & Institutions Code §§15610.07, 15610.30 in that they were the proximate cause of the

3   financial abuse to Claimants.

4   68.    At all times relevant herein, Respondents and their managing agents actually knew or

5   should have known based on their own observations and the explicit representations made by

6   Claimants of the dependent state of Claimant HILARY CHASE.  During the purchase

7   transaction JOHN CHASE explicitly stated that Claimants were only purchasing the Vehicle

8   because of AEB and FCWS Systems and that he believed that these supplemental safety systems

9   were necessary to accommodate HILARY CHASE's disability.  Respondents knew, or should

10   have known, that Claimants would not have expended money to purchase the Vehicle had they

11   known that the AEB and FCWS Systems were faulty.  In addition, Respondents knew or should

12   have known that the AEB and FCWS Systems were faulty based on the information contained in

13   the Vehicle's owner manual.  This information was withheld from Claimants until after

14   purchase.

15   69.    Despite knowing that Claimants were only purchasing the Vehicle because of the AEB

16   and FCWS Systems, and having constructive knowledge of the limitations of the Systems,

17   Respondents still pushed the transaction through.

18   70.    Respondents took undue advantage of Claimants by inducing them to purchase a Vehicle

19   that they never would have purchased had they known that the AEB and FCWS Systems did not

20   function.  Respondents knew or should have known that this conduct was likely to be harmful to

21   Claimants and that it would cause them to expend money on a Vehicle they ultimately would not

22   use.

23   71.    In doing the acts alleged herein, Respondents, and each of them, took, secreted,

24   appropriated, or retained (or else assisted in so taking, secreting, appropriating, or retaining) the

25   property of Claimants to a wrongful use, thereby causing them to suffer financial abuse.

26   72.    In committing the acts and omissions alleged herein, Respondents acted with

27   recklessness, oppression, fraud, or malice in the commission of this abuse.  As a direct and legal

28   result of Respondents violations of the Elder and Dependent Adult Civil Protection Act in its

dealings with Claimants, Claimants have suffered actual, consequential and incidental damages. Claimants continue to suffer damages, the precise amount of which is unknown at the present time; the limitations of Code of Civil Procedure §377.34 do not apply here.  In addition to all other remedies provided by law, pursuant to terms of Welfare & Institutions Code §15657.5, Claimants are entitled to actual damages, attorneys' fees, expenses and costs of suit incurred herein, and treble damages pursuant to Civil Code §3345, and all other forms of relief otherwise allowed by law.

WHEREFORE, Claimants pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Violations of the California Consumer Credit Reporting Agencies Act, Civil Code §1785.1 et seq.)**
**(Against KIA FINANCE)**

73.    Claimants reallege and incorporate by reference the allegations set forth above.

74.    KIA FINANCE has threatened to violate Civil Code §1785.25(a) by furnishing information on a specific transaction or experience to a consumer credit reporting agency when KIA FINANCE knew or should know have known the information was incomplete or inaccurate.

75.    Claimants rescinded the underlying purchase contract via the December 21, 2018 CLRA Letter, March 14, 2019 Complaint, Notice of Rescission, and through this Demand for Arbitration.  KIA FINANCE also know that Claimants did not owe any remaining debt to KIA FINANCE due to the defects with the Vehicle and Respondents' refusal to honor the warranties on the Vehicle.

76.    KIA FINANCE knew from at least December 2018 that reporting Claimants as past due on their account would be incomplete and inaccurate.  Despite this, KIA FINANCE has threatened to furnish derogatory information regarding Claimants' account to the Credit Reporting Agencies and has reported HILARY CHASE as delinquent.

77.    Claimants have been aggrieved by KIA FINANCE's threatened violation of the Consumer Credit Reporting Agencies Act and have suffered actual damages as KIA FINANCE begins to report negative information.

78.    KIA FINANCE's violations of the Consumer Credit Reporting Agencies Act are

1  negligent, entitling Claimants to recover actual damages pursuant to Civil Code §1785.31.

2  79.    KIA FINANCE's violations of the Consumer Credit Reporting Agencies Act are willful,

3  entitling Claimants to recover punitive damages of up to $5,000 each for each violation, and any

4  other relief the Forum deems proper, pursuant to Civil Code §1785.31(a)(1)(B).  Claimants

5  allege that each month of unlawful credit reporting consists of a separate and actionable violation

6  under Civil Code §1785.31(a)(1)(B).

7  80.    Claimants been aggrieved by KIA FINANCE's violations and threatened violations

8  described herein, and seek injunctive relief to put an end to said violations pursuant to Civil

9  Code §1785.31(b).

10  81.    Claimants are entitled to an award of attorneys' fees and costs pursuant to Civil Code

11  §1785.31(d).

12          WHEREFORE, Claimants pray for relief as set forth below.

13                              **SIXTH CAUSE OF ACTION**
         **(Violations of Consumers Legal Remedies Act, Civil Code §1750, *et seq*.)**
14              **(Against KIA, HLLTOP KIA, and KIA FINANCE)**

15  82.    Claimants re-allege and incorporate by reference herein each of the allegations set forth

16  above.

17  83.    At all relevant times:

18          (a)    The Vehicle and the 2017 KIA Sportage model, and other KIA vehicles, have

19                 been and will continue to be tangible chattels that Respondent KIA has designed,

20                 manufactured, and marketed for personal, family, or household purpose that are

21                 intended to be sold and/or leased and, as such, are "goods" as defined by

22                 California Civil Code §1761(a);

23          (b)    Claimants purchased the Vehicle for personal, family or household purposes and,

24                 as such, are "consumers" as defined in California Civil Code §1761(d);

25          (c)    The purchase of the Vehicle from KIA and HILLTOP KIA and the extension of

26                 the warranties constituted agreements between KIA and HLLTOP KIA on the one

27                 hand and Claimants on the other hand, as such, constitutes a "transaction" as that

28                 term is defined in California Civil Code §1761(e); and

1    (d)   KIA and HILLTOP KIA are each corporations and, as such, they are "persons" as

2          that term is defined in California Civil Code §1761(c).

3    84.   In offering the Vehicle and the 2017 KIA Sportage model, and other KIA vehicles, for

4    sale and lease to the public, KIA and HILLTOP KIA have represented, and will continue to

5    represent, directly or by implication, that the 2017 KIA Sportage, and other KIA vehicles

6    equipped with AEB and FCWS Systems, do not have any defects that would substantially affect

7    a consumer's ability to use it for the intended purpose.  Notwithstanding the representation that

8    the Vehicle came equipped with a functioning Autonomous Emergency Braking System and

9    Forward Collision Warning System, the AEB and FCWS Systems are essentially worthless to

10   Claimants because they are unable to determine if and when they function.  Respondents have

11   refused to either fix the defective Systems or refund Claimants their money.

12   85.   At all relevant times, KIA and HILLTOP KIA knew that Claimants did not know or

13   could not have reasonably discovered the problem prior to purchasing the Vehicle.  Respondents

14   had a duty to disclose the material facts clearly and conspicuously at the time of purchase

15   because of:

16   (a)   the materiality of the information;

17   (b)   the safety risk posed by the defect;

18   (c)   Respondents' affirmative representations about the express 5 year/60,000 miles

19         warranty;

20   (d)   Respondents' exclusive knowledge of material facts not known to Claimants or

21         the general public; and

22   (e)   Respondents' active concealment of material facts from Claimants and the general

23         public.

24   86.   By virtue of this ongoing practice and course of conduct, Respondents have violated and

25   will continue to violate §1770(a)(5) of the CLRA by representing that the AEB and FCWS

26   Systems have characteristics, uses and benefits which they does not have, *i.e.* that they functions

27   when it truth they does not.

28   87.   By virtue of this ongoing practice and course of conduct, Respondents have violated and

1    will continue to violate §1770(a)(7) of the CLRA by representing that the AEB and FCWS

2    Systems and the 2017 Kia Sportage, and other KIA vehicles equipped with the AEB and FCWS

3    Systems, are of a particular standard or quality when they are not of that standard or quality.

4    88.    By virtue of this ongoing practice and course of conduct, Respondents have violated and

5    will continue to violate §1770(a)(14) of the CLRA by representing that the purchase of the 2017

6    Kia Sportage, and other Kia vehicles equipped with the AEB and FCWS Systems, conferred or

7    involved rights, remedies, or obligations which the purchase does not have.  Specifically,

8    Respondent KIA expressly warranted the 2017 Kia Sportage, and other KIA vehicles, against

9    defects and then failed to honor that warranty.

10   89.    Respondents' violations of the CLRA present a continuing threat to Claimants in that

11   Respondents continue to engage in the above-referenced acts and practices, and unless enjoined

12   from doing so by this Forum, will continue to do so.  Had Claimants been informed that "[t]he

13   AEB does not operate in certain situations" and that "Due to the sensing limitation, the AEB may

14   not produce warning messages or warning alarm at all," or that "there is no valid test to prove the

15   autonomous brake system works," they never would have purchased the Vehicle.

16   90.    On December 21, 2018, Claimants provided notice to KIA, HILLTOP KIA, and KIA

17   FINANCE of the violations alleged above and provided KIA, HILLTOP KIA, and KIA

18   FINANCE an opportunity to cure those violations.  KIA, HILLTOP KIA, and KIA FINANCE

19   did not avail themselves of this opportunity.  Accordingly, Claimants seek an order from the

20   Forum awarding actual damages, statutory damages, equitable relief, including public injunctive

21   relief to enjoy Respondents' practices, as well as an award of attorneys' fees and costs pursuant

22   to Civil Code §1780, subdivisions (a), (b), and (e).

23        WHEREFORE, Claimants pray for relief as set forth below.

24                            **SEVENTH CAUSE OF ACTION**
     **(Violations of Unfair Competition Law - Business & Professions Code §17200, *et seq.*)**
25              **(Against KIA, HLLTOP KIA, and KIA FINANCE)**

26   91.    Claimants re-allege and incorporate by reference herein each of the allegations set forth

27   above.

28   92.    Business & Professions Code §17200 *et seq.* (the "Unfair Competition Law" or "UCL")

defines unfair competition to include any unlawful, unfair or fraudulent business act or practice. Unfair competition also includes "unfair, deceptive, untrue or misleading advertising." The UCL authorizes forums to order injunctive and/or declaratory relief and other equitable relief to remedy any violations.

93.     Respondents' conduct as alleged above has been and will continue to be unlawful in that the conduct constitutes and will continue to constitute a violation of the CLRA and the Song-Beverly Consumer Warranty Act, as alleged herein.

94.     Respondents' conduct as alleged above has been and will continue to be unfair in that the harm to Claimants and and the general public arising from Respondents' conduct outweighs the utility, if any, of the conduct alleged above.

95.     Respondents' conduct as alleged above has been and will continue to be fraudulent and likely to deceive reasonable consumers in that Respondents have omitted and/or failed to disclose, and will continue to omit and/or fail to disclose, material facts regarding the functionality and reliability of the KIA AEB and FCWS Systems and their failure to operate in certain situations or produce any warning at all.  Respondents' failure to disclose these defects constitutes deception by omission.  Respondents had a duty to disclose these material facts.

96.     The facts concealed and omitted are material facts in that a reasonable consumer would have considered them important in deciding whether or not to purchase his or her KIA Vehicle. Had Claimants been informed that the AEB and FCWS Systems did not function on the Vehicle, they would have purchased a different vehicle.

97.     The unlawful, unfair, and fraudulent business acts and practices of Respondents described herein present a continuing threat to Claimants and the general public in that Respondents are currently engaging in such acts and practices, and will persist to do so unless and until an injunction is issued by the Forum to enjoin Respondents false and deceptive advertising regarding the functionality of the AEB and FCWS Systems.

98.     As a result of Respondents' practices, Claimants and the general public have suffered and will continue to suffer injury in fact and lost money or property.  As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code

§17203, Claimants seek an order enjoining Respondents from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution.

99.    In addition, pursuant to Code of Civil Procedure §1021.5, Claimants seek recovery of attorneys' fees, costs, and expenses incurred in the filing and prosecution of this action.

WHEREFORE, Claimants pray for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**(Request for Declaratory Relief)**
**(Against KIA FINANCE)**

100.    Claimants reallege and incorporate herein by reference each and every allegation set forth above.

101.    HILLTOP KIA arranged for financing by and through KIA FINANCE at the time of purchase and assigned its rights under the sale agreement to KIA FINANCE.  Claimants made regular monthly payments to KIA FINANCE on the Vehicle.

102.    Because of the violations of law alleged herein and the fact that pursuant to the Rees-Levering Automobile Sales Financing Act assignee liability, Civil Code §2983.5, the Federal Trade Commission Holder In Due Course Rule, 16 CFR §433, *et seq*., and the language of the contract between the parties, any holder of this type of consumer credit contract is subject to all claims and defenses of the buyer against the seller, the contract is unenforceable; and Claimants are entitled to rescind the contract and recover up to the amount paid on the contract with interest, not to exceed the amount of the debt owing to the assignee at the time of the assignment. Claimants are also entitled to cancellation of the remaining debt owed to KIA FINANCE under the contract and attorneys' fees.

103.    Accordingly, an actual controversy has arisen and now exists between Claimants, on the one hand, and Respondent KIA FINANCE on the other hand, concerning the respective rights and obligations of the parties.  A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Claimants may fully ascertain their rights and obligations with respect to the contract and KIA FINANCE's credit reporting described herein.

WHEREFORE, Claimants pray for relief as set forth below.

///

## **PRAYER FOR RELIEF**

WHEREFORE, Claimants seek judgment in favor of themselves, and the general public, for the following:

(1)      An award of damages and restitution in favor of Claimants;

(2)      For a civil penalty pursuant to California Civil Code §1794(c) in an amount twice that of the actual damages;

(3)      For statutory damages;

(4)      For punitive damages;

(5)      For an injunction pursuant to California Civil Code §1785.31(b);

(6)      Injunctive and declaratory relief as pled or as the Forum may deem proper;

(7)      For prejudgment interest of the maximum legal rate;

(8)      An award of reasonable attorneys' fees as provided by applicable law;

(9)      All costs of suit; and

(10)     Such other and further relief as this Forum deems just and proper.

Dated:  August 21, 2019                   CONN LAW, PC

                                        By:  _____
                                             ELLIOT CONN

# EXHIBIT A

# RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Dealer Number 00669 | Contract Number | R.O.S. Number 36808429 | Stock Number KA354 |
|---|---|---|---|

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JOHN CHASE 4007 LYMAN RD OAKLAND CA 94602 ALAMEDA | HILARY CHASE 4007 LYMAN RD OAKLAND CA 94602 ALAMEDA | MICHAEL STEAD'S HILLTOP FORD KIA 3280 AUTO PLAZA RICHMOND CA 94806 CONTRA COSTA |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2017 | KIA SPORTAGE | 131 | KNDPRCA62H7148873 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $1000.00 |
|---|---|---|---|---|
| 2.90 % | $ 3112.45 (e) | $ 41250.35 (e) | $ 44362.80 (e) | $ 45362.80 (e) |

(e) means an estimate

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of N/A | N/A | N/A |
| One Payment of N/A | N/A | N/A |
| One Payment of N/A | N/A | N/A |
| 59 | 739.38 | Monthly beginning 12/21/2016 |
| N/A | N/A | N/A |
| One final payment 739.38 | | DUE ON 11/21/2021 |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

Prepayment. If you pay early, you may be charged a minimum finance charge.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**

   A. Cash Price of Motor Vehicle and Accessories — $ 33894.50 (A)

      1. Cash Price Vehicle — $ 33667.00

      2. Cash Price Accessories CROSSBARS — $ 227.50

      3. Other (Nontaxable)

        Describe N/A — $ N/A

        Describe N/A — $ N/A

   B. Document Processing Charge (not a governmental fee) — $ 80.00 (B)

   C. Emissions Testing Charge (not a governmental fee) — $ N/A (C)

   D. (Optional) Theft Deterrent Device(s)

      1. (paid to) GUIDE POINT — $ 995.00 (D1)

      2. (paid to) N/A — $ N/A (D2)

      3. (paid to) N/A — $ N/A (D3)

   E. (Optional) Surface Protection Product(s)

      1. (paid to) N/A — $ N/A (E1)

### STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded Comp., Fire & Theft | N/A | Mos. | $ N/A |
| $ N/A Ded Collision | N/A | Mos. | $ N/A |
| Bodily Injury $ N/A Limits N/A | | Mos. | $ N/A |
| Property Damage $ N/A Limits N/A | | Mos. | $ N/A |
| Medical N/A | N/A | Mos. | $ N/A |
| N/A | N/A | Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X

Co-Buyer X

Seller X

OPTIONAL DEBT CANCELLATION AGREEMENT. A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term 60 Mos. ZURICH GAP

        Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

Buyer Signs X

OPTIONAL SERVICE CONTRACT(S) You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 12.

| | Company | Term | | |
|---|---|---|---|---|
| I1 | Company ZURICH | Term 120 | Mos. or | 100000 Miles |
| I2 | Company N/A | Term N/A | Mos. or | N/A Miles |
| I3 | Company N/A | Term N/A | Mos. or | N/A Miles |
| I4 | Company N/A | | | |

(paid to) N/A

(Optional) Surface Protection Product

1. (paid to) N/A
2. (paid to) N/A $_____ N/A (E2)
   $_____ N/A (F)
EV Charging Station (paid to) N/A $_____ 3322.10 (G)
Sales Tax (on taxable items in A through F)
Electronic Vehicle Registration or Transfer Charge
(not a governmental fee) (paid to) CVR $_____ 29.00 (H)

(Optional) Service Contract(s) ZURICH $_____ 2695.00 (I1)
1. (paid to) N/A $_____ N/A (I2)
2. (paid to) N/A $_____ N/A (I3)
3. (paid to) N/A $_____ N/A (I4)
4. (paid to) N/A $_____ N/A (I5)
5. (paid to) N/A
J. Prior Credit or Lease Balance (e) paid by Seller to
Vehicle 1 N/A          Vehicle 2 N/A $_____ N/A (J)
(see downpayment and trade-in calculation)
K. (Optional) Debt Cancellation Agreement ZURICH GAP $_____ 895.00 (K)
L. (Optional) Used Vehicle Contract Cancellation Option Agreement $_____ N/A (L)
M. Other (paid to) N/A $_____ N/A (M)
For N/A
N. Other (paid to) N/A $_____ N/A (N)
For N/A
$_____ 41910.60 (1)
Total Cash Price (A through N)
Amounts Paid to Public Officials
A. Vehicle License Fees ESTIMATED $_____ 220.00 (A)
B. Registration/Transfer/Titling Fees ESTIMATED $_____ 111.00 (B)
C. California Tire Fees $_____ 8.75 (C)
D. Other N/A $_____ N/A (D)
$_____ 339.75 (2)
Total Official Fees (A through D)
3. Amount Paid to Insurance Companies $_____ N/A (3)
(Total premiums from Statement of Insurance) $_____ N/A (4)
4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee $_____ 42250.35 (5)
5. Subtotal (1 through 4)
6. Total Downpayment
A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)) $_____ N/A (A)
   Vehicle 1 N/A          Vehicle 2 $ N/A
B. Total Less Prior Credit or Lease Balance (e) $_____ N/A (B)
   Vehicle 1 $          Vehicle 2 $ N/A
C. Total Net Trade-In (A−B) (indicate if negative number) $_____ N/A (C)
   Vehicle 1 N/A          Vehicle 2 $ N/A
D. Deferred Downpayment Payable to Seller $_____ N/A (D)
E. Manufacturer's Rebate $_____ 1000.00 (E)
F. Other N/A $_____ N/A (F)
G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card $_____ N/A (G)
$_____ 1000.00 (6)
Total Downpayment (C through G)
(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)
7. Amount Financed (5 less 6) $_____ 41250.35 (7)

Term _____ N/A          Mos. or _____ N/A Miles
15 Company N/A
Term N/A          Mos. or _____ N/A Miles
Buyer X

Trade-In Vehicle(s)
1. Vehicle 1
Year N/A          Make N/A
Model N/A          Odometer _____ N/A
VIN N/A
a. Agreed Value of Property $_____ N/A
b. Buyer/Co-Buyer Retained Trade Equity $_____ N/A
c. Agreed Value of Property
   Being Traded-In (a−b) $_____ N/A
d. Prior Credit or Lease Balance $_____ N/A
e. Net Trade-In (c−d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $_____ N/A
2. Vehicle 2
Year N/A          Make N/A
Model N/A          Odometer _____ N/A
VIN N/A
a. Agreed Value of Property $_____ N/A
b. Buyer/Co-Buyer Retained Trade Equity $_____ N/A
c. Agreed Value of Property
   Being Traded-In (a−b) $_____ N/A
d. Prior Credit or Lease Balance $_____ N/A
e. Net Trade-In (c−d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $_____ N/A

Total Agreed Value of Property
Being Traded-In (1c+2c) $_____ N/A*
Total Prior Credit or Lease
Balance (1d+2d) $_____ N/A*
Total Net Trade-In (1e+2e) $_____ N/A*
(*See item 6A−6C in the Itemization of Amount Financed)

OPTION: ☐ You pay no finance charge if the
Amount Financed, item 7, is paid in full on or
before N/A , Year N/A .
SELLER'S INITIALS N/A

Agreement to Arbitrate: By signing below, you agree that, pursuant
to the Arbitration Provision on the reverse side of this contract, you
or we may elect to resolve any dispute by neutral, binding arbitration
and not by a court action. See the Arbitration Provision for additional
information concerning the agreement to arbitrate.

Buyer Signs X
Co-Buyer Signs X

Trade-In Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.
Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X N/A                    Co-Buyer Signature X N/A

AUTO BROKER FEE DISCLOSURE
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in

7. Amount Financed (5 less 6)

If negative, enter zero in line 6.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X N/A     Co-Buyer Signature X N/A

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____     Co-Buyer Signs X _____

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____     Co-Buyer X _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____     X _____

N/A

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____     Co-Buyer Signature X _____

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____     Date 11/21/16     Co-Buyer Signature X _____     Date 11/21/16

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____     Address _____

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing. Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____     Date _____     Guarantor X _____     Date _____
Address _____     Address _____

Seller Signs **MICHAEL STEAD'S HILLTOP FORD** DLA1/21/16   By X _____     Title MGR

**LAW** FORM NO. 553-CA-ARB (Rev 1-14)
from The Reynolds and Reynolds Company. TO ORDER: www.reysource.com 1-800-344-0996 fax 1-800-531-9055
THE PRINTED MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

00032

# EXHIBIT B

**HILLTOP**
**Ford** **KIA**

3280 Auto Plaza • Richmond, CA 94806
**(510) 222-4444**

**BAR# ARD185180**     **EPA# CAD981416290**

Upon request, you are entitled to receive a copy of the Towing Fees and Access Notice.

| CUSTOMER NO. 88629 | | ADVISOR TIM ARLEN | 45 | TAG NO. TA3 | INVOICE DATE 10/31/18 | INVOICE NO. K1CS303871 |
|---|---|---|---|---|---|---|
| JOHN CHASE | | LABOR RATE | LICENSE NO. | MILEAGE 16,321 | COLOR BLK CHERRY/ | STOCK NO. K4354 |
| 4007 LYMAN RD OAKLAND, CA 94602 | | YEAR / MAKE / MODEL 17/KIA/SPORTAGE/4DR AWD SX TURBO | | | DELIVERY DATE 11/21/16 | DELIVERY MILES 131 |
| DRJLCHASE@GMAIL.COM | | VEHICLE I.D. NO. K N D P R C A 6 2 H 7 1 4 8 8 7 3 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | | F.T.E. NO. | | P.O. NO. | R.O. DATE 10/09/18 | |
| RESIDENCE PHONE 775-741-5444 | BUSINESS PHONE 775-741-5444 | COMMENTS | | | | MO: 16321 |

```
JOB#  1 CHARGES--------------------------------------------------
LABOR-----------------------------------------------------------
J# 1 40K1Z         * BASIC BRAKES *         TECH(S):887                INTERNAL
            CUSTOMER REPORTS VEHICLE WILL NOT BRAKE/STOP WITH
            AUTONOMOUS BRAKING SYSTEM ON. UNABLE TO DUPLICATE
            OPERATION
            ATTEMPT TO VERIFY THE CUSTOMER CONCERN OF THE AUTONOMOUS
            BRAKE SYSTEM NOT FUNCTIONING. PERFORM A TEST WITH THE
            CUSTOMER VEHICLE AND USED SOME CARDBOARD BOXES AS OBJECTS TO
            RUN INTO. FOUND WHEN THIS WAS DONE THE SYSTEM DID NOT
            ACTIVATE. PERFORM SAME TEST WITH A NEW VEHICLE WITH THE SAME
            RESULT. CONTACTED KIA TECHLINE WITH CONCERN. THE KIA CONTACT
            ID# 12898261. BASED ON INITAL COMMUNICATION WITH TECHLINE
            ENGINEERING HAS STATED THAT THERE IS NO VALID TEST TO
            PROVE THE AUTONOMOUS BRAKE SYSTEM WORKS. IF THERE ARE NO
            WARNING INDICATOR AND / OR DTC ( DIAGNOSTIC TROUBLE CODE )
            IT IS ASSUMED TO BE FULLY FUNCTIONAL. AND SYSTEM WILL ONLY
            ENGAGE IN A EMERGENCY SITUATION WHERE IMPACT IS EMINENT.


JOB#  1 TOTALS-------------------------------------------------

                       JOB#  1 JOURNAL PREFIX K1CS  JOB#  1 TOTAL       0.00

COMMENTS-------------------------------------------------------
VEHICLE GONE - FOLLOWING UP AUTONOMOUS BRAKING

TECHNICIAN CERTIFICATION---------------------------------------
            887                    NORM LIM              887

TOTALS---------------------------------------------------------
```

BY SIGNING THIS DOCUMENT, YOU ARE ACKNOWLEDGING THE MICHAEL STEAD'S HILLTOP FORD KIA RECOMMENDED MAINTENANCE SCHEDULES EXCEED THE FACTORY RECOMMENDATIONS AND ARE DESIGNED TO MEET THE DEMAND OF AREA ROAD AND WEATHER CONDITIONS

| | |
|---|---|
| TOTAL LABOR.... | 0.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **0.00** |

CUSTOMER SIGNATURE
*********************** D U P L I C A T E   I N V O I C E ***********************

The Reynolds and Reynolds Company. ERANTIVE  CC606145 Q (12/14)

PAGE 1 OF 1            CUSTOMER COPY            [ END OF INVOICE ]   02:19pm

00034

EXHIBIT C

KEMNITZER, BARRON & KRIEG, LLP
ATTORNEYS AT LAW
www.kbklegal.com

ELLIOT CONN
445 BUSH STREET, 6TH FLOOR
SAN FRANCISCO, CA 94108
MAIN:  (415) 632-1900
FAX:  (415) 632-1901
elliot@kbklegal.com

OFFICE LOCATIONS:
SAN FRANCISCO
SACRAMENTO
LOS ANGELES
SAN DIEGO

December 21, 2018

**VIA CERTIFIED MAIL**
**RETURN-RECEIPT REQUESTED**

Kia Motors America, Inc.                    Michael C. Stead, Inc. dba Hilltop Ford Kia
111 Peters Canyon Rd                        3280 Auto Plaza
Irvine, CA 92606                            Richmond, CA 94806

Hyundai Capital America dba Kia Motors
Finance
3161 Michelson Drive, Suite 1900
Irvine, CA 92612

> **Re:**  ***Chase, et al. v Kia Motors America, Inc., et al.***
> **Vehicle**: 2017 Kia Sportage
> **VIN**: KNDPRCA62H7148873
> **Date of Purchase**: November 21, 2016

To Whom It May Concern,

Please take notice that this letter constitutes notice to each addressee, Kia Motors America, Inc. ("Kia"), Hyundai Capital America dba Kia Motors Finance ("Kia Finance") and Michael C. Stead, Inc. dba Hilltop Ford Kia ("Hilltop"), concerning violations of California's Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq*. ("Song-Beverly") and the Consumers Legal Remedies Act, Civil Code § 1750 *et seq*. ("CLRA") arising from the transaction described below. This correspondence is also a pre-litigation demand under the under Song-Beverly and Civil Code § 1782 of the CLRA.

Kemnitzer, Barron & Krieg, LLP has been retained to represent Doctor John Chase and Hilary Chase in a case arising out of their purchase of a new 2017 Kia Sportage ("the Vehicle"), which they purchased from Hilltop, with financing arranged through Kia Finance, on November 21, 2016. (**Exhibit A**). Do not contact Dr. Chase or Ms. Chase. All further communications should be directed to Kemnitzer, Barron and Krieg, LLP.

As Dr. Chase explained to Hilltop's representatives at the time that he purchased the Vehicle, the Vehicle was purchased for the use of his disabled daughter, Hilary Chase. When Hilary was 20 years old, she suffered a traumatic brain injury that has left her permanently disabled and has impacted her short-term memory, depth perception, and attention span. Hilary Chase is a "Disabled Person" under California Civil Code § 1761(g).

Demand Letter
December 21, 2018
Page 2 of 3

Dr. Chase decided to purchase the Vehicle because he believed that the Vehicle came equipped with a functioning Forward Collision Warning System ("FCWS") and Autonomous Emergency Braking System ("AEB"). Before purchasing the Vehicle, Dr. Chase had seen Kia television advertisements for the FCWS and AEB. He also relied on online representations made by Kia, Kia promotional materials, the window sticker on the Vehicle, and the other representations by both Kia and Hilltop. Had Dr. Chase known that the AEB and FCWS systems did not function, he never would have purchased the Vehicle for his daughter.

As a result, Dr. Chase chose the Vehicle because of its supplemental safety features, specifically, the FCWS and AEB. In purchasing the Vehicle, Dr. Chase made it very clear to Hilltop's representatives that he was only purchasing the Vehicle because of the FCWS and AEB and that he believed that these supplemental safety systems were necessary to accommodate Hilary's disability.

Following their purchase of the Vehicle, Dr. Chase and Ms. Chase noticed that the AEB did not work. Unlike Dr. Chase's other vehicle, also equipped with an autonomous braking system, the Vehicle's AEB would never engage.

Each time that the Vehicle was taken to Hilltop for repair, Dr. Chase notified Hilltop that he believed that the FCWS and AEB were not functioning. Only repair orders #299262 (**Exhibit B**) and #303871 (**Exhibit C**), reflect Dr. Chase's complaints.

On October 9, 2018, Dr. Chase took the Vehicle in for repair and complained that the "Vehicle will not brake/stop with autonomous braking system on." (**Exhibit C**). Hilltop was not able to verify that the AEB system worked and noted "Unable to duplicate operation." (*Id.*). In fact, Hilltop even attempted to test the system with cardboard boxes, but the Vehicle ran through the boxes. Hilltop tried the same test with a new vehicle, and that vehicle also ran through the cardboard boxes. (*Id.*) Hilltop has confirmed that the Vehicle's AEB system does not work, but Kia refused to authorize a repair.

Dr. Chase and Ms. Chase has also experienced major engine issues with the Vehicle. (*See* **Exhibit B**).

Upon learning that the AEB system did not function and that Kia would not repair it, Dr. Chase began to contact Kia and Hilltop to ask them to repurchase the Vehicle and refund all of the money paid. As Dr. Chase has explained repeatedly, he only bought the Vehicle because of the supplemental safety systems and never would have bought the Vehicle had he known the systems did not function.

Both Kia and Hilltop ultimately took the untenable position that because there were no fault codes indicating an error, it must be assumed that the AEB system is working. This is despite the fact that Hilltop has verified that the AEB system *does not* work.

Kia has refused to repair the Vehicle under the express warranty. In addition, the failure of the AEB system to function properly breaches the implied warranties of merchantability and fitness for a particular use. In addition, Kia, Kia Finance, and Hilltop's conduct violate Civil Code §§ 1770(a)(5),(7),(9),(14),(16), and (19).

Demand Letter
December 21, 2018
Page 3 of 3

## **Demand**

On behalf of Dr. Chase and Hilary Chase, we demand that within 30 days of receipt of this letter, Kia, Kia Finance, and Hilltop rescind the purchase transaction, refund Dr. Chase and Hilary Chase all of the amounts they have paid on the Vehicle, pay off the outstanding contract balance, take possession of the Vehicle, pay an additional $10,000.00 to Dr. Chase and Hilary Chase for incidental and statutory damages, and pay attorneys' fees, costs, and expenses in the amount of $12,500.00.

Please contact me upon receipt of this letter. Once again, do not contact our clients.

Very truly yours,

Elliot Conn

00038



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee

$

Chase 7.09

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Post
$

Sent To

Kia Motors America, Inc.
111 Peters Canyon Rd.
Irvine, CA 92606

Street and

City, State,

7018 0360 0001 1996 2555

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Kia Motors America, Inc.
111 Peters Canyon Rd.
Irvine, CA 92606

9590 9402 4273 8121 3968 66

2. Article Number *(Transfer from service label)*

7018 0360 0001 1996 2555

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

DEC 26 2018 IRVINE USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

7.09 Chase

Postmark
Here

7.09

Hyundai Capital America
dba Kia Motors Finance
3161 Michelson Drive, Suite 1900
Irvine, CA 92612

7018 0360 0001 1996 2562

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

Hyundai Capital America
dba Kia Motors Finance
3161 Michelson Drive, Suite 1900
Irvine, CA 92612

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

9590 9402 4273 8121 3968 80

2. Article Number (Transfer from service label)
7018 0360 0001 1996 2562

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

00040



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| Certified Mail Fee | |
|---|---|
| $ | |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) $ | |
| ☐ Return Receipt (electronic) $ | Postmark |
| ☐ Certified Mail Restricted Delivery $ | Here |
| ☐ Adult Signature Required $ | |
| ☐ Adult Signature Restricted Delivery $ 7.09 | |

Chase 7.09

Postage
$
Total
$

Michael C. Stead, Inc.
dba Hilltop Ford Kia
3280 Auto Plaza
Richmond, Ca 94806

Sent
Street
City,

7018 0360 0001 1996 2579

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Michael C. Stead, Inc.
dba Hilltop Ford Kia
3280 Auto Plaza
Richmond, Ca 94806

9590 9402 4273 8121 3968 73

2. Article Number *(Transfer from service label)*
7018 0360 0001 1996 2579

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Vera Peplin

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

00041

# EXHIBIT D

**Elliot Conn**

| | |
|---|---|
| **From:** | Bergerot, Taylor [KMA] <TBergerot@Kiausa.com> |
| **Sent:** | Wednesday, January 30, 2019 12:55 PM |
| **To:** | Elliot Conn |
| **Cc:** | Spencer Janssen |
| **Subject:** | RE: John & Hilary Chase v. Kia Motors America, Inc. |
| **Attachments:** | 12997207 - Chase (Owners Manual AEB Explanation).pdf |

Hi Elliot,

Thank you for your patience while we took the time to evaluate your client's claim. After reviewing the provided documents and following up with your client's servicing dealer directly, we were able to identify one dealer visit for a warrantable defect with your client's vehicle – the CEL resulting in engine replacement at 14,627 miles. Per the repair order, the vehicle was delivered to the dealership on 7/14/18 and per the service advisor's notes the vehicle was completed and your client was contacted for pick-up on 8/6/18 – total of 24 days out of service for this repair.

When evaluating the other service records we show:

- 12/9/18 – customer requested detail but not completed due to rain
- 2/27/18 – Touch of Glass detail completed, along with oil change, installation of tail lens ordered by your client, and the normal operation of the smart lift gate that the dealer de-activated per customer's preference
- 6/8/18 – replacement of 2 tires due to puncture/sidewall damage
- 8/17/18 – installation of an after-market alarm, installation of cargo cover, treatment of scratches and dents, and replacement of broken rear door glass that appears to have been an insurance claim
- 12/1/18 – tire replaced

None of these visits pertain to any warrantable defect with the vehicle and all items replaced/installed were customer pay items.

In reference to your client's concerns with the forward collision warning and/or autonomous braking, KMA has concluded that Mr. Chase's vehicle is operating as designed. As stated on the RO's dated 7/14/18 and 10/8/18, Michael Stead's Hilltop and KMA's Technical Hotline noted no concerns with the system's operation. For an explanation of the Autonomous Emergency Braking (AEB) system, please review the attached documentation pulled directly from Mr. Chase's owner's manual:

On page 6-51: *"This system is only a supplemental system and it is not intended to, nor does it replace the need for extreme care and attention of the driver. The sensing range and objects detectable by the sensors are limited...AEB does not stop the vehicle completely and does not avoid collisions."*

On page 6-55: *"The AEB operates in accordance with the risk levels, such as the distance from the vehicle/passer-by in front, the speed of the vehicle/passer-by in front, and the driver's vehicle operation. Do not drive dangerously to activate the AEB system on purpose."*

On page 6-57: *"When the AEB is not working properly, the AEB warning light will illuminate and the warning message will appear for a few seconds. After the message disappears, the master warning light will illuminate."*

On page 6-58: *"Due to the sensing limitation, the AEB may not produce warning messages or warning alarm at all."*

On page 6-62: *"The AEB does not operate in certain situations. Thus, never test-operate the AEB against a person or an object. It may cause a severe injury or even death."*

As mentioned in the included excerpts from the owner's manual above, the AEB system is in place to reduce or avoid accident risk and is designed to act as a "last-resort", similar to the way an airbag would deploy, and is only intended to engage when vehicle detects an impending accident with no attempts made by the driver to stop up until the very last moment prior to collision. As outlined in the owner's manual, the AEB system is a supplemental system and is not a substitute for safe driving practices. If the vehicle is driven safely, the AEB system should theoretically never have to engage – the same way airbags shouldn't deploy unless involved in an accident where certain criteria are met. During the dealer's inspection of Mr. Chase's vehicle, there were no fault codes in the system and the vehicle performed identically to another comparable vehicle on the lot.

With all these details in mind and in consideration of the engine replacement where the vehicle was down 24 days by means of warrantable repair, KMA would be agreeable to settle this matter for $5,000.00 inclusive of your fees. Please advise at your convenience.

Best,



Taylor Bergerot   Sr. Escalated Case Administrator, Western Region
**Kia Motors America, Inc.**
111 Peters Canyon Rd, Irvine, CA 92606
**T** (949) 430-3291  **F** (949) 299-3239  **E** TBergerot@kiausa.com

---

**From:** Elliot Conn [mailto:elliot@kbklegal.com]
**Sent:** Tuesday, January 22, 2019 12:44 PM
**To:** Bergerot, Taylor [KMA]
**Cc:** Spencer Janssen
**Subject:** RE: John & Hilary Chase v. Kia Motors America, Inc.

Taylor,

My apologies.  Here you go.

-Elliot

Elliot J. Conn
**Kemnitzer, Barron & Krieg, LLP**
445 Bush St., 6th Floor
San Francisco, CA 94108
(415) 632-1900
elliot@kbklegal.com
*This email may contain information that is confidential or attorney-client privileged and may constitute inside information. The contents of this email are intended only for the recipient(s) listed above. If you are not the intended recipient, you are directed not to read, disclose, distribute or otherwise use this transmission. If you have received this email in error, please notify the sender immediately and delete the transmission. Delivery of this message is not intended to waive any applicable privileges.*

---

**From:** Bergerot, Taylor [KMA] [mailto:TBergerot@Kiausa.com]
**Sent:** Tuesday, January 22, 2019 12:36 PM
**To:** Elliot Conn <elliot@kbklegal.com>
**Subject:** RE: John & Hilary Chase v. Kia Motors America, Inc.

Hi Mr. Conn,

00044

Exhibit E

## KEMNITZER, BARRON & KRIEG, LLP
ATTORNEYS AT LAW
www.kbklegal.com

ELLIOT CONN
354 PINE STREET, 5ᵀᴴ FLOOR
SAN FRANCISCO, CA 94104
MAIN: (415) 632-1900
FAX: (415) 632-1901
elliot@kbklegal.com

OFFICE LOCATIONS:
SAN FRANCISCO
SACRAMENTO
LOS ANGELES
SAN DIEGO

## NOTICE OF RESCISSION OF CONTRACT,

## REJECTION AND/OR REVOCATION OF ACCEPTANCE OF VEHICLE

I.

Notice is hereby given that John Chase and Hilary Chase rescind that certain contract signed by them on November 21, 2016 at Hilltop Ford Kia, an authorized Kia dealership in Richmond, California, by the terms of which John Chase and Hilary Chase entered into the purchase of a 2017 Kia Sportage. The vehicle identification number is KNDPRCA62H7148873. The total purchase price was $45,362.80. A copy of the Retail Installment Sales Contract is attached hereto and marked as Exhibit A.

II.

John Chase and Hilary Chase hereby exercise their right to revoke acceptance of this car, particularly the 2017 Kia Sportage, which the dealership sold to John Chase and Hilary Chase under fraud, mistake, duress, and undue influence.

III.

The grounds for rescission of the contract and revocation of acceptance of the vehicle are as follows:

## A.   BREACH OF EXPRESS WARRANTY IN VIOLATION OF THE SONG BEVERLY CONSUMER WARRANTY ACT

Since the date of purchase, the vehicle has been in for repair an unreasonable number of times due to defective conditions in the vehicle related to the failure of the vehicles' "Autonomous Emergency Braking System" ("AEB") and other supplemental safety features, including but not limited to a Forward Collision Warning System ("FCWS"). Such conditions

00046

Notice of Rescission
May 23, 2019
Page 2 of 4

substantially impair the use, safety and value of the vehicle.  Kia and its representatives have
refused to repair the defective systems, in breach of the express warranty provided.  Kia and its
representatives have been unable to repair the defects and have refused to replace the vehicle or
refund to John Chase and Hilary Chase the money paid for the vehicle pursuant to Civil Code
section 1793.2.  As a result, the consideration received by John Chase and Hilary Chase under
the contract has failed in whole or material part through the fault of Kia and its representatives at
Hilltop Kia.

John Chase and Hilary Chase entered into the contract under the mistaken belief that the
vehicle was free from defects and was in a fit and merchantable condition.  In fact, the vehicle
was defective, unfit for use and in an unmerchantable condition at the time of sale.  Had John
Chase and Hilary Chase known the true condition of the vehicle, they would not have entered
into the contract.

**B.     BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY IN
VIOLATION OF THE SONG BEVERLY CONSUMER WARRANTY ACT**

John Chase and Hilary Chase purchased the vehicle with the reasonable expectation that
the vehicle was fit to be used for the ordinary and intended purpose of providing Plaintiffs
reliable and safe transportation.  Kia knew when it manufactured and sold the vehicle that the
intended and ordinary purpose of the vehicle was to provide its driver with reliable and safe
transportation.

At all times that John Chase and Hilary Chase had possession of the vehicle, Plaintiffs
used it for the intended and ordinary purpose of transportation.  However, the vehicle was not fit
for the ordinary purposes for which it was sold.  It was in fact defective and not fit to provide
Plaintiffs with dependable, safe transportation.

Notice of Rescission
May 23, 2019
Page 3 of 4

## C.     BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE IN VIOLATION OF THE SONG BEVERLY CONSUMER WARRANTY ACT

In purchasing the vehicle, John Chase and Hilary Chase required that the vehicle have functioning supplemental safety systems, including a functioning Autonomous Emergency Braking System to allow Hilary Chase to safely drive the Vehicle in light of her disability.

Kia and its agents knew or had reason to believe that John Chase and Hilary Chase were relying on Kia and its agents' skill and/or judgment that the AEB System functioned.  As a result, the sale of the vehicle was accompanied by an implied warranty of fitness for a particular purpose extending from Kia and its agents to John Chase and Hilary Chase.

However, the vehicle was not fit for the particular purpose that it was warranted in that "[t]he AEB does not operate in certain situations" and that "Due to the sensing limitation, the AEB may not produce warning messages or warning alarm at all."

### D.     VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

Kia and its agents have also violated the following provisions of the Cosnumers Legal Remedies Act in connection with the sale of the vehicle:

a.     §1770(a)(7) of the CLRA by representing that the AEB System and the 2017 Kia Sportage are of a particular standard or quality when they are not of that standard or quality.

b.     1770(a)(14) of the CLRA by representing that the purchase of the 2017 Kia Sportage conferred or involved rights, remedies, or obligations which the purchase does not have. Specifically, Defendant KIA expressly warranted the 2017 Kia Sportage against defects and then failed to honor that warranty.

Notice of Rescission
May 23, 2019
Page 4 of 4

IV.

Based upon the above facts and circumstances, the car has failed in material respects to comply with the representations made by Kia and its representatives at Hilltop Kia and Kia Motors Finance and justifies John Chase and Hilary Chase revoking acceptance of the contract.

V.

The public interest will be prejudiced in permitting this contract to stand, insofar as it was obtained by mistake and/or fraud or mistake of fact, and therefore the contract should be rescinded.

VI.

John Chase and Hilary Chase hereby rescind the contract, and base their rescission on the above items as set forth in California Civil Code § 1689.  The revocation of acceptance is made pursuant to California Commercial Code § 2608.

VII.

Demand is hereby made that Hilltop Ford Kia, and Kia Motors Finance refund to John Chase and Hilary Chase their purchase price, finance charges, incidental and consequential damages, civil penalties, punitive damages, statutory damages, attorneys' fees, costs and expenses.

In the event that this Notice of Rescission is not accepted within thirty (30) days of the terms and conditions set forth herein, John Chase and Hilary Chase hereby give notice that thereafter the car may sold.  Commercial Code §2706.

Dated:  May 23, 2019                              KEMNITZER, BARRON & KRIEG


By:  _____
ELLIOT CONN

Exhibit F



U.S. Department of Transportation
**National Highway Traffic Safety Administration**

**1200 New Jersey Avenue SE
Washington, DC 20590**

July 30, 2019

Mr. J.S. (Jurassic) Park
VP/PL & Regulatory Compliance
Kia Motors America
111 Peters Canyon Road
Irvine, CA 92606-1790

NEF-150JK
19V-539

**Subject:**  Collision-Avoidance Assist may not Engage

Dear Mr. Park:

This letter serves to acknowledge Kia Motors America's notification to the National Highway Traffic Safety Administration (NHTSA) of a safety recall which will be conducted pursuant to Federal law for the product(s) listed below. Please review the following information to ensure that it conforms to your records as this information is being made available to the public. If the information does not agree with your records, please contact us immediately to discuss your concerns.

**Makes/Models/Model Years:**
KIA/OPTIMA/2019

**Mfr's Report Date:**   July 19, 2019

**NHTSA Campaign Number:**   19V-539

**Components:**
FORWARD COLLISION AVOIDANCE: AUTOMATIC EMERGENCY BRAKING

**Potential Number of Units Affected:**   11,423

**Problem Description:**
Kia Motors America (Kia) is recalling certain 2019 Optima vehicles equipped with Gamma 1.6L Turbo-GDI or Theta II 2.0L Turbo-GDI engines.  A software error in the Forward Collision-Avoidance Assist (FCA) system may cause the braking assist function to not engage when a stationary vehicle is detected.

**Consequence:**
Improper intervention of the Forward Collision-Avoidance Assist can increase the risk of a crash.

**Remedy:**
Kia will notify owners, and dealers will update the FCA software, free of charge.  The recall is expected to begin August 27, 2019. Owners may contact Kia customer service at 1-800-333-4542.  Kia's number for this recall is SC179.

**Notes:**
Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.



We have received Kia's proposed owner notification letter and it is currently under review.  You will be notified of any changes or concerns once our review is complete.

Please be reminded of the following requirements:

Copies of all notices, bulletins, dealer notifications, and other communications that relate to this recall, including a copy of the final owner notification letter and any subsequent owner follow-up notification letter(s), are required to be submitted to this office no later than 5 days after they are originally sent (if they are sent to more than one manufacturer, distributor, dealer, or purchaser/owner).

Please be reminded that under 49 U.S.C. § 30112(a)(3), it is illegal for a manufacturer, to sell, offer for sale, import, or introduce or deliver into interstate commerce, a motor vehicle or item of motor vehicle equipment that contains a safety defect once the manufacturer has notified NHTSA about that safety defect.  This prohibition does not apply once the motor vehicle or motor vehicle equipment has been remedied according to the manufacturer's instructions.

As stated in Part 573.7, submission of the first of six consecutive quarterly status reports is required within one month after the close of the calendar quarter in which notification to purchasers occurs.  Therefore, the first quarterly report will be due on, or before, 30 days after the close of the calendar quarter.

Your contact for this recall will be Jennifer Kruger who may be reached by phone at (202) 366-2461, or by email at jennifer.kruger@dot.gov. We look forward to working with you.

Sincerely,

Joshua Neff
Chief, Recall Management Division
Office of Defects Investigations
Enforcement



00052

Exhibit G

**2019 Kia Optima Forward Collision-Avoidance Assist (FCA) Chronology**
**Basis of Safety Defect Determination 573.6(c)(6)**

| | |
|---|---|
| May 20, 2019 | During development of the Forward Collision-Avoidance Assist (FCA) system for Optima taxi for Korean market, supplier (Hyundai MOBIS) identified a potential software error. Supplier also identified the same potential error may exist with the FCA software currently installed on some of 2019MY Optima vehicles. Supplier notified Kia Motors Corporation (KMC) of the potential software error. |
| May 21-31, 2019 | KMC works with supplier to conduct investigation and detailed analysis of the potential FCA software error. |
| June 1- July 15, 2019 | KMC and supplier jointly conduct extensive duplication testing on actual vehicle and confirm software error which impairs the braking assist function to work properly when the FCA senses a potential frontal collision with a stationary vehicle. |
| July 16, 2019 | KMC makes decision to conduct recall.    No customer complaints, no warranty claims, no reported accidents or collisions. |

## PROOF OF SERVICE

**Re:**   *Chase, et al. v. Kia Motors America, Inc., et al.*
**JAMS Arbitration, No. Pending**

I, Elliot Conn, certify that I am not a party to the proceeding herein, that I am and was at the time of service over the age of 18 years old, and a resident of the State of California. My business address is 354 Pine Street, 5th Floor, San Francisco, California 94104.

On August 21, 2019, I served the following:

**DEMAND FOR ARBITRATION BEFORE JAMS**

by depositing true copies thereof, enclosed in separate, sealed envelopes, each of which was addressed respectively to the person(s) and address(es) shown below, for collection and processing for mailing following this business' ordinary practice with which I am readily familiar.  On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with the postage thereon fully prepaid, in the United States mail at San Francisco, California.

**AMIR NASSIHI**
**SAMANTHA K. BURNETT**
**SHOOK, HARDY & BACON L.L.P.**
**One Montgomery, Suite 2600**
**San Francisco, CA 94104**
**Attorneys for Respondents KIA MOTORS AMERICA, INC.; MICHAEL C. STEAD, INC. dba MICHAEL STEAD'S HILLTOP FORD KIA; and HYUNDAI CAPITAL AMERICA dba KIA MOTORS FINANCE**

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 21, 2019

_____
Elliot Conn

RECEIVED

AUG 2 3 2019

SHOOK, HARDY & BACON L.L.P.

$2.35 0
US POSTAGE
FIRST-CLASS
062S0010745638
94104

B51299.12

Amir Nassihi
Samantha Burnett
SHOOK, HARDY & BACON, LLP
One Montgomery, Suite 2600
San Francisco, CA 94104

CONN LAW, PC
354 Pine Street, 5th Floor
San Francisco, CA 94104

00057

CONN LAW, PC
ELLIOT CONN          Bar No. 279920
354 Pine St., 5th Floor
San Francisco, CA  94104
Telephone:    (415) 417-2780
Facsimile:    (415) 358-4941
elliot@connlawpc.com

Attorneys for Claimants JOHN CHASE and HILARY CHASE

DEMAND FOR JAMS ARBITRATION

| | |
|---|---|
| JOHN CHASE and HILARY CHASE,<br><br>Claimants.<br><br>vs.<br><br>KIA MOTORS AMERICA, INC.; MICHAEL C. STEAD, INC. dba MICHAEL STEAD'S HILLTOP FORD KIA; and HYUNDAI CAPITAL AMERICA dba KIA MOTORS FINANCE.<br><br>Respondents.<br><br>_____/ | **JAMS Reference No. 1100106806**<br><br>**ADDENDUM TO CLAIMANTS' ARBITRATION DEMAND FOR VIOLATIONS OF:**<br><br>**(1)  THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CIVIL CODE, §1785.1 *ET SEQ.*;**<br><br>**(2)  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 *ET SEQ.***|

    Pursuant to the JAMS Comprehensive Arbitration Rules & Procedures, Rule 10, Claimants JOHN CHASE and HILARY CHASE assert the following additional claims:

**NINTH CAUSE OF ACTION**
**(Violations of the California Consumer Credit Reporting Agencies Act, Civil Code §1785.1 *et seq.*)**
**(On behalf of Claimant JOHN CHASE)**
**(Against KIA FINANCE)**

105.    KIA FINANCE negligently and willfully furnished information to the credit reporting agencies with respect to Claimant JOHN CHASE it knew or should have known was inaccurate, misleading and incomplete.

106.    KIA FINANCE failed to conduct a reasonable investigation as to whether its credit

1

reporting with respect to Claimant JOHN CHASE was accurate, misleading, or incomplete.

107.   Claimant is entitled to actual damages, attorneys' fees, costs, punitive damages and injunctive relief, pursuant to California Civil Code § 1785.31, as a result of Respondent KIA FINANCE's willful and malicious conduct.

WHEREFORE, Claimants pray for relief as set forth in the Demand for Arbitration.

### TENTH CAUSE OF ACTION
**(Violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*)**
**(On behalf of Claimant JOHN CHASE)**
**(Against KIA FINANCE)**

108.   Claimant JOHN CHASE is a "consumer" as defined by 15 U.S.C. §168la.

109.   Respondent KIA FINANCE is a "person" as defined by 15 U.S.C. §1681a(b).

110.   KIA FINANCE furnished false, inaccurate and incomplete information to the credit reporting agencies regarding Claimant JOHN CHASE.

111.   KIA FINANCE violated 15 U.S.C. §1681n and §16810 by engaging in the below conduct that violates 15 U.S.C. §1681s-2(b).

112.   KIA FINANCE willfully and negligently failed to conduct an investigation of the false and inaccurate information that Claimant JOHN CHASE disputed.

113.   KIA FINANCE willfully and negligently failed to review all relevant information concerning Claimant JOHN CHASE's account.

114.   KIA FINANCE willfully and negligently failed to report the results of investigations to Equifax, Experian and Transunion.

115.   KIA FINANCE willfully and negligently reported inaccurate and false status of the information to the credit reporting agencies.

116.   KIA FINANCE willfully and negligently failed to properly participate, investigate and comply with the reinvestigations that were conducted by the credit reporting agencies concerning the false and inaccurate information disputed by Claimant JOHN CHASE.

117.   KIA FINANCE willfully and negligently failed to provide the credit reporting agencies with the factual information and evidence Claimant JOHN CHASE submitted proved that the information concerning Claimant JOHN CHASE's credit reporting was false and inaccurate.

118.    KIA FINANCE willfully and negligently continued to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Claimant JOHN CHASE's account to the credit reporting agencies.

119.    KIA FINANCE willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b) and failed to conduct a reasonable investigation.

120.    As a result Claimant JOHN CHASE has been damaged and seeks actual, statutory and punitive damages for KIA FINANCE's negligent and willful violations of the FCRA, and attorney fees and costs, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §16810.

WHEREFORE, Claimants pray for relief as set forth in the Demand for Arbitration.

Dated:  September 14, 2020                        CONN LAW, PC

By: _____
ELLIOT CONN